ALBERT A. LESAN *vs.* MAINE CENTRAL RAILROAD COMPANY.

Waldo. Opinion January 26, 1885.

*Railroad. Crossing. Flagman. Negligence. Law and fact.*

To entitle a plaintiff to recover against a railroad corporation for an injury caused by a collision with its train at a crossing, while he was driving with horse and wagon upon a highway across the track, he must show that the defendant's negligence caused the injury. In order to show that, he must show that he was not himself, at the time, guilty of any negligence that helped to cause it. If this does not appear in the circumstances of the accident, it must be otherwise proved.

The rule is established in this State, that it is negligence *per se*, for a person to cross a railroad track without first looking and listening for a coming train, if there is a chance for doing so.

The railroad company and the traveler have equal rights at the intersection of the track with the highway. But in exercising those rights a moving train has the right of way; the traveler must keep out of its way; it cannot be required to stop except in cases of apparent danger not otherwise avoidable; the proper warnings must be given to the traveler to keep out of its way; and the persons running a train have the right to rely upon the supposition that a traveler will obey the law of the road if he can do so.

A plaintiff need not allege in his declaration that the cause of negligence was that the railroad company had no flagman at the crossing, in order to

be permitted to show such omission as evidence of negligence, if none be required either by statutory or municipal regulation.

It is not a question of law, except in extreme cases, whether the necessities of the public travel require the presence of a flagman at a particular railroad crossing, although the facts touching the question are undisputed. If different intelligent and honest minds might exercise different judgments upon the undisputed facts, it is usually a question for the jury.

ON exceptions and motion to set aside the verdict and for a new trial.

An action to recover damages for personal injuries, and damage to carriage, by reason of the alleged negligence of the servants of the defendant corporation in running and managing a locomotive and tender, causing a collision with the plaintiff's carriage at Bridge street crossing in Belfast, February 17, 1882. The writ was dated March 15, 1882. The plea was not guilty. The verdict was for the plaintiff for one thousand one hundred eighty-one dollars and thirty-one cents. The defendant moved to set aside the verdict and for new trial; the defendant also alleged exceptions.

The material facts are sufficiently stated in the opinion.

*Thompson and Dunton,* for the plaintiff, cited: *Whitney* v. *Cumberland,* 64 Maine, 541; *Webb* v. *R. R. Co.* 57 Maine, 117; *Stuart* v. *Machiasport,* 48 Maine, 487; *Cunningham* v. *Horton,* 57 Maine, 420; *Patterson* v. *Wallace,* 28 Eng. Law and Eq. 48; *Norton* v. *R. R. Co.* 113 Mass. 366; *Carleton* v. *Lewis,* 67 Maine, 76; *Plummer* v. *R. R. Co.* 73 Maine, 591; *Ernst* v. *R. R. Co.* 35 N. Y. 9; *Dascomb* v. *R. R. Co.* 27 Barb. (N. Y.) 221; Sherman, Neg. 556, 31; *Strong* v. *R. R. Co.* Rep. Nov. 1, 1882, p. 558; *Larrabee* v. *Sewall,* 66 Maine, 376; *Buel* v. *R. R. Co.* 31 N. Y. 314; *R. R. Co.* v. *Yarwood,* 17 Ill. 509; *O'Brien* v. *McGlinchy,* 68 Maine, 557; *Bigelow* v. *Reed,* 51 Maine, 325; *Baker* v. *Portland,* 58 Maine, 199; *Garmon* v. *Bangor,* 38 Maine, 443; *Keith* v. *Pinkham,* 43 Maine, 501; *Norris* v. *Litchfield,* 35 N. H. 271; *Morris* v. *R. R. Co.* 45 Iowa, 29; *Weymire* v. *Wolfe,* 52 Iowa, 533; *Brown* v. *R. R. Co.* 50 Mo. 461; S. C. 51 Mo. 420.

*Drummond and Drummond,* for the defendant, cited: *Continental Imp. Co.* v. *Stead,* 95 U. S. 161; *Grows* v. *R. R. Co.*

67 Maine, 100; *Beisiegel* v. *R. R. Co.* 40 N. Y. 9; *Weber* v. *R. R. Co.* 58 N. Y. 451; *Dyer* v. *R. R. Co.* 71 N. Y. 228; *Houghkirk* v. *Canal Co.* 92 N. Y. 219 (44 Am. R. 370); *Haas* v. *R. R. Co.* 47 Mich. 401.

PETERS, C. J.   To entitle the plaintiff to recover, he must show, first, that the defendants were guilty of negligence; the injury itself does not import negligence.

Secondly, he must show that their negligence caused the accident.   There must be a visible connection of cause and effect. It is not enough to show that the defendants' negligence was adequate and sufficient to cause it — that it might have caused it — he must show that it did cause it; that it was the predominating efficient cause of the accident and injury.

If the accident was caused partly by the plaintiff's own negligence, then it was not, in a legal sense, caused by the negligence of the defendants.   In such case, it was caused by both parties.   If the result was produced by a commingling of the negligences of the two parties, the plaintiff cannot recover.

Therefore, thirdly, the plaintiff must produce affirmative proof, directly or indirectly, that he was not himself guilty of any negligence which helped cause the accident.   Sometimes this is impliedly shown by the proof of the manner of the injury.   That is, by proving the defendants' negligence, the same proof may exculpate the plaintiff from any charge of negligence.   It may be inferred that a plaintiff was, at the time of an accident, using due care, from the absence of all appearance of fault upon his part in the circumstances under which the accident happened. To state the requirement more precisely, the plaintiff must show affirmatively, or it must affirmatively appear, that he was himself in the use of due care.   If it so appears from a full account of the circumstances attending the occurrence, whether the evidence be put in for one purpose or another, then he does affirmatively sustain the burden obligatory upon him.

To illustrate the idea:  By the negligence of a railroad company a train of cars runs off the track, whereby passengers are injured.   In such a case the passenger, ordinarily situated in

the car, who sues for damages for. his injury, would not be required to show any fact further than the occurrence itself. Proof of the accident tells all that can be told,— is, *prima facie* at least, the whole story. *Res ipsa loquitur.* *Stevens* v. *Railway*, 66 Maine, 74. The injured party is passive in such a case. In the case, however, of a collision between a railroad train and the wagon of a traveler, the traveler plays usually an active part disconnected with or independent of the acts of others, and the acts of the two parties conjunctively produce a collision. In such case not much can be based upon inference and presumption. The prosecuting party must make it distinctly appear that his own remissness did not contribute in causing' the injury.

The present case is of the latter description. With the burden of proof on the plaintiff, we think the verdict in his favor should not stand. His conduct seems to have been in no view defensible. He knew the situation of the crossing; was aware that an engine was likely at any time to be upon the track; could have both seen and heard the movement of the engine seasonably to enable him to save himself from injury, and testifies that he does not know whether he did either or not; was driving rapidly upon a descending grade to the crossing, passing another team on the way; and, when it was too late for either party to avoid the predicament, met with the accident. It was the repetition of an experiment too often made, of taking narrow chances in passing in front of an advancing train. Our very strong belief is, that the absence of whistling or bell-ringing or of signalling of any kind played no material part in causing the accident. When the agents of the company saw that a collision was impending they were helpless to prevent it.

The rule is now firmly established in this state, as well as by courts generally, that it is negligence *per se*, for a person to cross a railroad track without first looking and listening for a coming train if there is a chance for doing so. *State* v. *Maine Central*, 76 Maine, 357. "No neglect of duty on the part of a railroad company will excuse any one approaching such a crossing from using the senses of sight and hearing where these may be available." 1 Thomp. Neg. p. 426, and cases in notes. Experi-

ence has taught men that there are and can be no safeguards against injuries at railway crossings nearly as efficacious as to look and listen for an approaching train.

The counsel for the plaintiff in an able argument upon the facts of the case, places too much reliance upon his view of the relative rights of the parties in the use of the highway at its crossing with the railroad. At the place of intersection there are, no doubt, concurrent rights. Neither has an exclusive right of passage. They have equal rights. But the manner of exercising those rights is quite another thing. A railroad company would not have the right to occupy the way in a manner or to an extent that would unreasonably delay the public travel or render it dangerous; nor to start a train at an instant when it would be likely to produce collision. But when a train is under way it has the first right of the road. Its right may then be first exercised. It cannot be required to stop except in cases of apparent danger not otherwise avoidable. The traveler must stop for the train. For that purpose are the requirements of signals and gates and the like to warn the traveler to keep out of the way. There must be a uniform and certain rule to regulate the matter or dire confusion would ensue. The persons running a train have the right of relying upon the supposition that a traveler intends to wait for the passing of the train, unless it appears that he has not a chance to do so.

In *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, the law of the road is expressed as follows: "Of course, these mutual rights (of railroad and traveler) have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach — so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way." In Pierce on Railroads, 342, it is said: "The obligations of the company and of the traveler

are mutual and reciprocal, and the same degree of care to avoid a collision is incumbent on each.   It is its duty to give the warnings required by statute, or in the exercise of ordinary care; and it is his duty to have his attention alive to them, and to heed them.   The company, having a fixed place of movement and a peculiar momentum, has the right of precedence in crossing highways; and he must wait till the train, the coming of which he knows or ought to know, has passed." In *Whitney* v. *Railroad*, 69 Maine, 208, VIRGIN, J., says: "On account of the motive power used by railroads, and the difficulties attending its management, and the noises incident thereto, the statute has prescribed means particularly adapted to give notice of the approach of a train, the object being to warn all persons of such approach in season to enable them to stop at a safe distance, and thus avoid the risk not only of collision but also of alarm to horses."

For the defense it is contended that the plaintiff could not give in evidence the fact of a failure to station a flagman at the crossing because no such ground of recovery is alleged in the writ.   It need not be alleged.   Neither the statute nor any municipal proceedings imposed such a requirement at the place in question.   Therefore a failure in that regard would not constitute negligence *per se* — negligence in law.   If the jury found that such a caution was indispensable, its omission would be at most only evidence of negligence,— one circumstance to be taken in connection with all other circumstances upon the main or central question whether the defendants at the particular time and place prudently managed their road.   1 Thom. Neg. 419, and cases.   *McGrath* v. *Railroad*, 63 N. Y. 528; *Com.* v. *Railroad*, 101 Mass. 201; *Houghkirk* v. *Canal Co.* 92 N. Y. 219.

It was contended by the defense that it is a question of law and not of fact, whether the exigencies in any given case require the presence of a flagman at a railroad crossing.   Of course, there may be extreme cases where a judge would be justified in giving an absolute direction upon the question.   But generally it must be an issue for the jury.   It is said, the jury are not a very competent tribunal for the settlement of such a dispute.   The

court should inform and aid the jury. It is also said that when the facts respecting the situation are undisputed the conclusion must be one of law. But undisputed facts may weigh against one another. One person may give the dominant weight to one fact and another person to another. Usually such questions present an exigency to be judged of. Even though the facts are undisputed, if they are of such a nature or pertain to such a matter, that different intelligent and honest minds might exercise different judgments upon them, the question to be decided belongs to the jury. It is plainly observable that the tendency is to multiply the instances in which the court will take negligence cases from the jury and decide them as matters of law, but the advancement of the law in such respects has not extended to the limit assigned for it in the argument for the defendants. See *Cumberland Valley R. R.* v. *Mangans,* 23 Am. Law Reg. N. S. 518, and note.

*Motion sustained.*

DANFORTH, VIRGIN, FOSTER, EMERY and HASKELL, JJ., concurred.