WILLARD WHITE *vs.* REMI MICHAUD AND MARY MICHAUD.

Aroostook. March 26, 1932.

*A. S. Crawford, Jr.*, for plaintiff.
*J. F. Burns,*
*C. F. Small,*
*O. L. Keyes,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

BARNES, J.   This case came up on the general motion for a new trial, after verdict for plaintiff in the sum of $5,000.

The injuries complained of were sustained in a collision of defendants' automobile and plaintiff's motorcycle, which occurred about the width of a car within the dooryard of Mack Levesque in Fort Kent.

Plaintiff was preceding defendants down a "good gravel road," twenty-four feet wide, and his machine was hit by defendants' right forward bumper and mudguard after he had entered the dooryard, turning to his left.

There is no claim that the damages awarded are excessive, and negligence of defendants is admitted.

Contributory negligence is the defense.

The only question for the Court is whether the record displays evidence to sustain the verdict.

The accident occurred in mid-afternoon of a clear June day, on a reach of road straight for approximately a half mile in either direction, with no other occupants of the road in sight.

Though a minor, plaintiff was in his twenty-first year, a laboring man, trained in the common schools only through the sixth grade.

He lived with his parents not far westerly from the Levesque home. While defendants were calling at his home, plaintiff saw and

talked with them and proceeded·easterly down the road to find his brother and return with him on his motorcycle to their work in the woods on Eagle Lake waters.

Defendants, with four passengers, in a big Buick sedan, followed him down the road at a distance of 700 to 500 feet, Remi Michaud driving, with Mary at his side.

The Levesque house stands many feet back from the road, on level ground, and between it and the road there was no ditch.

According to plaintiff's testimony, when he was 500 feet westerly of this house, he was travelling in the middle of the road at the speed of twenty-five to thirty miles an hour.

When he had run on about a hundred feet farther he looked back and saw defendants' car 500 feet in his rear.

He testified that he thrust out his left arm, ran on at the same or decreasing speed on his left-hand side of the road, heard no signal from the car behind him, turned in at the Levesque entrance, arm still in signal position, heard his sister, on the Levesque door-stoop, scream, "Look out! There's a car coming!" and, in the door-yard, five feet north of the northerly limit of the wrought part of the road was hit by the car. His machine was demolished, he was thrown thirty-eight feet eastward, suffering such fractures of one leg that it was amputated.

In all this he is corroborated by several witnesses, two of whom were sitting with his sister on the stoop that he had almost reached when he was hit.

There was testimony conflicting with his, given by defendants, three of their passengers and a woman just within her door some 400 feet westerly of the point of collision.

Defendant's testimony, if believed, would establish that plaintiff rode the last 400 feet on middle and right side of the road, came to a full stop on the right side, opposite the Levesque entrance, while defendants following sounded the car horn at 400 feet and again at fifty feet from him; that at the last signal plaintiff was crossing the middle of the road directly in front of the approaching car, and that to avoid a collision defendants turned into the dooryard, on their left, and striking the motorcycle, carried plaintiff a dozen feet on their running board, and until he rolled to the ground.

Where the motorcycle was jammed to the ground it made an indentation plainly visible next day. This mark was five feet north of the northerly margin of the road.

Next morning a traffic policeman surveyed the scene, with Remi Michaud, and from the information which the latter furnished, learned that the automobile entered the Levesque dooryard, pursued a diagonal course for fifteen feet before colliding with the motorcycle and ran on thence for seventy-five feet before being brought to a stop.

There was testimony given by more than one witness that defendant's, Remi Michaud's, breath smelled of alcohol, and one man testified that before noon on that day Remi Michaud drank "split" with him.

Mr. Michaud testified of twice applying his brakes, first near where he first sounded his horn, and again as follows: "When I saw that I was going to hit him in the middle of the road, then I turned, in other words, to clear him. The motorcycle followed the car, and as I turned, the motorcycle also turned, and then the motorcycle fell on the soft ground on the side of the road and he fell on the running board and was carried some ways, about ten or twelve feet. Then I stopped my car near the wagon — near the barn. I applied my brake and stopped the car."

Defendants' speed was given as fifty to fifty-five miles an hour.

Details as to the operation of both vehicles were fully presented to the jury. The testimony on vital points could not be reconciled. The jury found preponderance on plaintiff's side.

If they accepted Remi Michaud's statement that he did not attempt to brake his car till after the collision, they were justified in believing that he proceeded with utter disregard of the danger ahead of him.

With the testimony of defendants' speed and direction the jury may have found that the driver's control of the car was not of the degree required of a driver about to overtake and pass another traveller.

The legal rights of plaintiff are plain. No one would suggest that a traveller may not turn to enter his driveway or that of another on the left of the road as he may be riding.

The jury were to determine whether or no plaintiff exercised due care in the circumstances at the time of turning to his left.

When, as in this case, it is pleaded in defense that negligence of the plaintiff is the proximate cause of his injury, the exercise of due care by plaintiff must be shown. "It must affirmatively appear that he was himself in the use of due care. If it so appears from a full account of the circumstances attending the occurrence, whether the evidence be put in for one purpose or another, then he does affirmatively sustain the burden obligatory upon him." *Lesan* v. *Maine Cent. R. Co.*, 77 Me., 85.

"Negligence and contributory negligence are as a general rule questions of fact for the jury, and so long as a question remains whether either party has performed his legal duty, or has observed care and caution in requisite degree, and the determination of the question involves the weighing and determining of evidence, the question must be submitted as one of fact to the jury.

The court can not say as matter of law that there was contributory negligence on the part of the plaintiff unless it be that any other inference could not reasonably be drawn from the evidence." *Rogers* v. *Forgione & Romano Co.*, 126 Me., 354.

And due care required that the driver of a car, "intending to cross the street in front of another car, should so watch and time the movements of the other car as to reasonably insure" himself of safe passage. *Fernald* v. *French*, 121 Me., 4.

If the jury were convinced that defendants, only occupants of the road besides plaintiff, were more than a hundred feet behind him when plaintiff turned, they may well have found defendants remiss in operation of the car, or regardless of consequences in continuing in a course and at a speed that took them ninety feet into the Levesque dooryard without stopping.

No emergency confronted the driver of the car, save that which he occasioned.

The duty of this Court is plain.

Interpreting the evidence, subsequent to verdict for plaintiff, in the light favorable to him, we can not conclude otherwise than that their finding is a just verdict.

*Motion overruled.*