NERE LARRY LEGERE *vs.* ARTHUR TATRO
(and a companion case [1]).

Bristol.    October 25, 1943. — December 1, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Motor Vehicle,* Parking.  *Way,* Public: parking.  *Negligence,* Motor vehicle, Use of way, Violation of law.  *Conflict of Laws.  Proximate Cause.*

There was a violation of § 16–a of c. 103 of the Public Laws of New Hampshire as inserted by Laws of 1927, c. 76, § 3, by the operator of a truck who had begun a journey in the dark and a blinding snow storm and, after thirty minutes of travel, had left the truck standing for two or three minutes partly on and partly off the travelled portion of a highway in a rural district in New Hampshire at a place where it was not feasible to park entirely off the travelled portion and under such conditions that the truck could not be seen from a distance of more than one hundred feet, while he cleared snow from the windshield and headlights because it would not have been good judgment, although it would have been possible, to proceed without doing so.

Parking by the operator of a motor vehicle on a public highway in New Hampshire in violation of § 16–a of c. 103 of the Public Laws of New Hampshire, inserted by Laws of 1927, c. 76, § 3, was as a matter of law a cause of injury sustained by him when his vehicle was struck in the rear by another vehicle negligently operated, and barred recovery against the other operator.

Comity required the application, in determining in our courts liability for personal injuries sustained on a highway of New Hampshire, of the law of that State establishing that violation of a statute respecting parking of motor vehicles was negligence per se and as a matter of law a cause of injury sustained in a collision while so parked.

---

[1] The companion case is by the same plaintiff against Roxbury Iron & Metal Co., Inc.

Two ACTIONS OF TORT. Writs in the Third District Court of Bristol dated January 26, 1939.

On removal to the Superior Court, the actions were tried together before *Leary*, J.

*G. P. Walsh*, for the plaintiff.

*F. E. Smith*, for the defendants.

Cox, J. These cases were heard by an auditor whose findings of fact were to be final. Rules 88, 89 of the Superior Court (1932). *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108–109, 111–112. See *Howland* v. *Stowe*, 290 Mass. 142, 146; *Redden* v. *Ramsey*, 309 Mass. 225, 227. Thereafter the cases were heard by a judge of the Superior Court upon the plaintiff's motions for judgment on the reports. The judge ruled that the law of New Hampshire, where the accident occurred, constituted a bar to recovery, "found" for the defendant in each case, and reported the cases with the stipulation that, if this was error, judgments might be entered for the plaintiff in the amounts stated. The auditor found that the defendant Tatro was operating a truck owned by the defendant in the companion case and that he was its agent and servant, acting within the scope of his employment. His finding that Tatro was negligent is not questioned.

At the time of the accident, November 17, 1938, § 16–a of c. 103 of the Public Laws of New Hampshire, inserted by Laws 1927, c. 76, § 3, provided as follows: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear view of such vehicle may be obtained from a distance. of two hundred feet in each direction upon such highway, nor upon any main highway unless a clear and unobstructed width of not less than ten feet upon the main traveled portion of said highway opposite such standing vehicle shall be

left for free passage of other vehicles thereon. The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

The auditor found that "the Plaintiff did park or leave standing his truck, attended, upon the paved or improved or main traveled portion of a highway. . . . outside of a business or residential district. Upon the understanding that according to the decided cases by the Supreme Court of the State of New Hampshire, it is the duty of a driver of a motor vehicle to drive on until he finds a place to park off the traveled part of the road, (LaFlamme *vs.* Lewis, 89 N. H. 69–74) I find that it was practicable for the Plaintiff to park or leave his vehicle standing off the paved or improved or the main portion of the highway."

The subsidiary findings upon which this ultimate conclusion was reached, and other findings, are as follows. The accident occurred at about 4:30 A.M., when it was dark, on a main traveled thoroughfare between Manchester and Concord. The plaintiff was proceeding northerly, as was Tatro, who was some distance behind. The road has two cement lanes, each of which is ten feet wide, and a dirt shoulder, three feet wide, on each side. On the east side of the road, at or about where the accident occurred, the shoulder tapers off to a grassy bank which rises steeply. Because of the incline of this bank it is not feasible to pull off the cement road and park on any part of the bank. From a slight curve south of the scene of the accident the road extends straight down a slight grade for several hundred feet. The district is rural with no street lights. At no place on the down grade were there any open spaces on the side of the road permitting traffic "to pull off either side of the road and park." Evidence "disclosed" that there were no open spaces suitable for parking anywhere in that vicinity, although it "appeared" that two or three miles south of where the accident occurred there "may" have been a space on the side of the road that was wide enough for an automobile to pull com-

pletely off the road and park. It was very stormy and snowing hard. Thick, heavy snow was blowing from the north which interfered with the vision of both operators, but did not obstruct the vision of either of them in respect to objects in the road carrying or equipped with lights and reflectors, at a distance of between fifty and one hundred feet ahead.

It does not appear where the plaintiff, who lived in New Bedford, commenced his journey, but his destination was Laconia, New Hampshire. He and his helper had stopped outside Manchester for something to eat about forty-five minutes before the accident. When they returned to the truck, it was snowing very hard. They proceeded on their journey for about thirty minutes when the plaintiff "decided" to stop in order to wipe an accumulation of snow from the windshield and headlights. "According to the evidence given by the Plaintiff and his helper, snow had collected on the windshield and the headlights to such an extent that it was inadvisable to proceed further without cleaning off this accumulation. It would have been possible to have continued along without cleaning . . . [them] but it would not have been good judgment to have done so." The plaintiff stopped his truck, which was eight to ten feet wide over all, on the right or east side of the road with about four feet of its width off the cement. A good portion of its width "hung over" the right-hand cement lane. The plaintiff alighted and was wiping the snow from the right front headlight when the truck operated by Tatro collided with the rear of the plaintiff's truck, causing his injuries. Two or three minutes had elapsed between the time the plaintiff stopped and had been out of his truck and the time of the collision. Specific findings are that the plaintiff's truck was not disabled while on the paved or improved or main travelled portion of the highway in such a manner and to such an extent that it was impossible to avoid stopping and temporarily leaving the truck in "such" position; that the plaintiff parked or left standing his truck within the meaning of said § 16–a, although the stop was momentary; that the plaintiff, as a reasonable, prudent man, "felt" that the

weather conditions necessitated his stopping to wipe off the
windshield and headlights. "Whether or not to continue
on without doing so would have been dangerous is not merely
a matter of conjecture. It might well have been dangerous
to have done so. . . . Was the stop by the Plaintiff one
which the exigencies of traffic may have required? If the
phrase, 'exigencies of traffic,' can mean difficulties ex-
perienced because of climatic obstructions such as fog, rain
or snow, then I find that this stop by the Plaintiff was one
which the exigencies of traffic may have required. If the
phrase . . . is limited to instances in which the flow of
traffic is temporarily halted because of barriers in the road
or the usual stopping and starting connected with obstruc-
tions caused by other traffic such as the presence of vehicles,
persons or animals, then I find that this stop was not one
which the exigencies of traffic may have required."

Our attention has been directed to statutes of New Hamp-
shire and also to decisions of the Supreme Court of that
State. G. L. (Ter. Ed.) c. 233, § 70. It is apparent from
the record that statutes and decisions of that State were
brought to the attention of the auditor and trial judge. In
*Fontaine* v. *Charas*, 87 N. H. 424, the defendant, at about
midnight, stopped his automobile, in which the plaintiff's
intestate was riding, on the traveled part of the highway in
violation of Laws 1927, c. 76, § 3, when it was "practicable"
for him to have driven it off the proscribed portion of the
highway at the place where the accident occurred, and
another automobile ran into it from behind. The court said
at page 426: "We believe that by the use of this phrase
[leave standing any vehicle, whether attended or unat-
tended] the legislature intended to make illegal any volun-
tary stopping of a vehicle on the highway for any length of
time, be that length of time long or short, except, of course,
such stops as the exigencies of traffic may require." Our
attention has not been directed to any decision of the New
Hampshire court where the words "exigencies of traffic"
have been precisely defined. In the absence of any light on
the matter, it would be for this court, if necessary, to deter-
mine their meaning in accordance with our own understand-

ing, conformably to our own law. *Pilgrim* v. *MacGibbon,* 313 Mass. 290, 291–292, and cases cited.

We are of opinion, however, that the New Hampshire decisions go to the extent of saying that a stop such as the plaintiff in the case at bar made was a violation of the statute in question. It is true that, in the *Fontaine* case, the act of the defendant in stopping is characterized as "needless" (page 426), and that it appeared that it was "practicable" for him to have driven off the travelled road at the very place where the accident occurred, but there was no evidence as to how long he had been stopped. In *Laflamme* v. *Lewis,* 89 N. H. 69, the collision occurred at about 1:53 A.M. There was a heavy fog at irregular intervals along the road and the visibility at the place of the accident was poor. The defendant's truck had stopped with part of it on the cement road shortly before the plaintiff's automobile collided with it from behind. The trial judge instructed the jury with reference to the second clause of the statute now under consideration, in effect, that when a fog is so dense that with accompanying darkness it becomes impossible to see an automobile or truck that is parked two hundred feet away, with reasonable lights and reflectors, such as were required by the statute, then the statutory duty cannot be complied with. He said: "At any rate, I am going to charge you that inasmuch as the law does not contemplate the impossible, you will pay no attention to that feature of this statute, provided you find the fog was so dense that the truck could not be seen at a distance of two hundred feet if equipped with lights and reflectors . . ." (pages 73–74). The court, in holding that the charge was erroneous, said at pages 74–75, "We do not understand the trial court's statement that under such circumstances [fog] 'the statutory duty cannot be complied with.' The statutory duty of a driver under the conditions enumerated in the act is to keep moving until he can find a place to park outside the traveled portion of the highway. There is nothing inherently impossible about this. We are not impressed by defendant's argument that 'it is . . . matter of common knowledge that one can travel for miles . . . without finding any place where a car

can be parked completely off the surfaced part of a highway. The interpretation of the statute for which the plaintiffs contend [that there is no statutory or common law rule that precluded the operator of the defendant's truck from parking the truck to the left of the main travelled portion of the highway] would make it practically impossible to park a car on a foggy night except in business or residence districts.' We think it was the design of the statute to prohibit the parking of cars in the road under conditions of poor visibility. Some inconvenience to drivers may be a necessary concomitant of this prohibition."

The plaintiff properly concedes that the word "practicable" in the statute is not synonymous with "convenient." *Sanders* v. *H. P. Welch Co.* 92 N. H. 74, 80. In the case just cited the defendant requested an instruction that its truck was properly parked if it was left as far off the travelled portion of the highway as practicable, and within clear view for a distance of two hundred feet to cars approaching from the south. The request was denied and the jury was instructed that if the truck could have been driven off the road at another location so that it would be clear of the main travelled portion of the highway, and if such failure caused or contributed to the injury, the defendant was liable. In discussing the exceptions to the denial of the request and to the charge as related to the duty imposed by the parking statute, the court pointed out that there was evidence that the defendant's driver could have parked further south and further north; that he did not because he waited for the defendant's south-bound truck; that the defendant was not harmed by the instruction; and that it was unnecessary to decide whether it would be strictly accurate under all conditions.

In the light of these decisions we are of opinion that on the facts found the plaintiff violated the statute in question. There is more to the case than the bare fact that the plaintiff stopped to remove snow from his windshield and headlights. When he came out of the lunch room in Manchester it was snowing very hard. Thick, heavy snow was blowing from the north into the path of both trucks, and

the snow interfered with the plaintiff's vision. The plaintiff was transporting a load of furniture. It was not until he had travelled head on into the storm that he "decided" to stop and remove the accumulated snow. Even then it would have been possible to continue without cleaning off the snow, although it would not have been good judgment to do so. This is not a case where the plaintiff was confronted with a sudden emergency. It is true that the storm, combined with his progress into its face, brought about the deposit of snow on his windshield and lights, but this was somewhat of a gradual process and it appears that in the meantime the plaintiff had travelled several miles. Moreover, there is the specific finding that the snow which interfered with the vision of both operators "did not obstruct the vision of either operator in respect to objects in the road carrying or equipped with lights and reflectors, at a distance of between 50 and 100 feet ahead."

What has been said applies with equal force to the application of so much of said § 16–a as provides that "in no event shall any person park or leave standing any vehicle . . . unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway." We assume, despite the words "in no event," that a reasonable construction of this portion of the statute would carry the limitation as to "exigencies of traffic." It is apparent that, in the circumstances disclosed, a clear view of the plaintiff's standing truck could not be obtained from the required distance. As was said in *Laflamme* v. *Lewis*, 89 N. H. 69, 74, "If a 'traveler's view is obstructed' by fog within the meaning of the speed regulations . . . , the conclusion is inevitable that the same circumstances must preclude 'a clear view' of a vehicle parked upon the highway."

In that case, the question of the duty of an operator as to speed where his view is "obstructed," under New Hampshire Laws 1927, c. 76, § 2, was considered. The court said that it was content with the quoted "reasoning and conclusion" of our own court in *Woodman* v. *Powers*, 242 Mass. 219, where it was said, among other things (page 223):

"The obstruction to view ordinarily would be the same whether it is caused by . . . permanent objccts, or is due to darkness, a blinding snow storm or thick fog." See *Fine* v. *Parella*, 92 N. H. 81; *Tufts* v. *White*, 92 N. H. 158, 160.

The plaintiff contends that, if he violated the statute in question, it remained a question of fact whether the violation was causal. This contention, however, appears to have been disposed of adversely to the plaintiff. In *Johnson* v. *Boston & Maine Railroad*, 83 N. H. 350, it was held that the causal violation of a statute requiring a license to operate a motor vehicle is a legal wrong and is not to be treated as merely evidence of fault. It was said at pages 360–361: "It has seemed advisable to the legislature that the public be protected by the settlement of this matter before harm is done, rather than to leave it to be tried out after an accident has happened. It is a reasonable preventive and remedial measure." And, at page 364, it was said: "The plaintiff's act of operating a car was causal in the strictest sense. It was not his mere presence in the highway, but his operation of the car, which brought him into the collision." In *Prescott* v. *Yurchus*, 86 N. H. 108, it was said: "Upon the motion for a directed verdict for Yurchus there is no occasion to consider the circumstances of the collision other than that of the defendant's unlicensed driving. Such driving was wrongful and imposed liability for damages occurring in its course, through the operation of the statute . . . forbidding it." The New Hampshire court then quoted from *Johnson* v. *Railroad*, 83 N. H. 350, 364, a case where the violation of the statute by the plaintiff was under consideration, as follows: "The plaintiff's act of operating a car was causal in the strictest sense." Continuing, the New Hampshire court said: "The non-liability of others for hurting one driving without a license and his own liability for hurting others rest on the same principle of his wrong made legally causal by statute. It follows that instead of Yurchus' right to a directed verdict in his favor, the plaintiffs were entitled to have verdicts against him directed for them." *Hobbs* v. *Boston & Maine Railroad*, 88 N. H. 112. In *Fontaine* v. *Charas*, 87 N. H. 424, already referred to, where Laws 1927,

c. 76, § 3, was considered, it was said the act of the defendant in violating the statute as to "parking" was clearly causal. "The defendant's fault consisted in his violation of a statute obviously designed to prevent collisions between moving and stationary vehicles. His illegal act of needlessly stopping in the path of travel exposed the decedent to the risk of a rear-end collision, and when such a collision occurred she was injured. The collision, and its attendant injuries, was the result of the combination of the defendant's illegal act and . . . [the] negligence [of the operator of the automobile that struck the defendant's automobile, in which the decedent was riding]" (pages 426–427). *Putnam* v. *Bowman*, 89 N. H. 200, 204.

The plaintiff contends, however, that the cases of *Fontaine* v. *Charas*, 87 N. H. 424, *Laflamme* v. *Lewis*, 89 N. H. 69, and *Putnam* v. *Bowman*, 89 N. H. 200, establish that the question of causation does not depend upon the statute but is one of fact. The *Fontaine* case, already referred to, does not support this contention. In the *Laflamme* case, it seems that one issue for the jury was whether the defendant's truck was properly equipped with lights and a reflector, and that it might also be "found" that the truck was parked in violation of the statute (page 75). In these circumstances, it seems that these issues required their submission to the jury. In the *Putnam* case, there was "evidence" that the truck was illegally parked and also "evidence" that it was left without lights (pages 202–203). Issues for the jury upon the "evidence" were created. We find nothing in these cases to support the plaintiff's contention.

We are of opinion that there is nothing contrary to the conclusions here reached in our own cases of *Herman* v. *Sladofsky*, 301 Mass. 534, and *Bresnahan* v. *Proman*, 312 Mass. 97.

The plaintiff contends finally that this court should not follow the decisions of the Supreme Court of New Hampshire on the questions here involved, for the reason that the doctrine of comity does not so require. We are of opinion that this contention is not sound. In *Peterson* v. *Boston & Maine Railroad*, 310 Mass. 45, a case involving a statute of

New Hampshire, it was said at page 47: "In determining this question [whether as matter of law there was no evidence that the negligence of the defendant contributed to cause the accident] we are bound by the law of New Hampshire in so far as that law establishes the standard of care. If by rule of law in New Hampshire a given set of facts does or does not constitute negligence we are bound by that rule as to that set of facts." (See cases cited at pages 47 and 48.)

In *Bresnahan* v. *Proman*, 312 Mass. 97, a case where another statute of New Hampshire was involved, it was said at page 99: "As we understand the law of New Hampshire, violation of the statute is more than mere evidence of negligence. It is in itself a breach of duty upon which a cause of action may be rested if it causes injury. . . . The statute prescribed the standard of duty owed by the defendant at the time and place of the accident, and that standard must control wherever the case is tried."

It follows from what has been said that judgment is to be entered for the defendant in each case.

*So ordered.*