**Mrs. Frances S. FRESHMAN,**
**Plaintiff,**

v.

**John Dolan STALLINGS, Jr., Defendant and Third-Party Plaintiff,**

**L. A. DeBardelaben, Inez P. DeBardelaben, Trading as Guaranteed Waterproofing Co., of Greensboro, N. C. and James Ray Holbrook, Third-Party Defendants.**

**Civ. No. 652.**

United States District Court,
E. D. North Carolina,
Raleigh Division.

Feb. 9, 1955.

Harris, Poe & Cheshire, Raleigh, N. C., for plaintiff.

J. C. B. Ehringhaus, Jr., Raleigh, N. C., for defendant and third-party plaintiff.

Ruark, Young & Moore, Raleigh, N. C., for third-party defendants.

GILLIAM, District Judge.

Prior to this hearing without a jury this action had been settled insofar as plaintiff is concerned by a stipulation in favor of plaintiff and against the defendant establishing negligence and amount of damages, and evidence was presented by the parties only with respect to the defendant's claim that third-party defendants are liable to him by way of contribution.

The controversy arose out of a collision at night between defendant's vehicle, which was preceeding from Raleigh

to Durham, and the vehicle in which plaintiff was riding, which was proceeding from Durham to Raleigh; some time prior to this collision—witnesses estimate the time from three minutes to one hour—the third-party defendants' pick-up truck (hereafter called the Holbrook truck) had collided with the rear end of a truck just ahead of it, as a result of which one of its tires was flattened out and its mechanism damaged to such extent that its motor could not be operated; the defendant negligently approached the stalled Holbrook truck, a three-quarter ton pick-up, which was blocking a substantial portion of the right lane, from four to six feet, and in order to avoid a collision with it turned to its left; at this moment one of the occupants of the Holbrook truck was standing on the highway, to defendant's left of the Holbrook truck, and trying to avoid striking him the defendant turned farther to his left and negligently struck the vehicle in which plaintiff was riding which was then in its proper lane; no flares or lanterns had been displayed to warn of the presence of the stalled Holbrook truck on the highway, but a rear light on the truck was burning at the time of the approach of defendant's vehicle; a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite the truck was left for free passage of other vehicles thereon, and a clear view of such truck could be obtained from a distance of two hundred feet in both directions along the highway.

I find these further facts with reference to the conditions under which and the manner in which the collision in question occurred.

The collision occurred after dark on U. S. Highway No. 70; the night was clear and the weather favorable; the point where the collision occurred was on a straight stretch with no obstructions at or near the scene; the highway rose in a slight incline toward Durham; it was eighty-five steps from the point to the foot of the incline; the paved portion was twenty-two feet wide with a dirt shoulder approximately six feet wide on the north side, leading to a shallow drain; in the first collision the front of the Holbrook truck was involved; the tail light on the Holbrook truck was knocked off in the second accident involving the collision with plaintiff's vehicle; as defendant approached the scene, travelling fifty miles per hour, he was blinded by the lights of an approaching vehicle; thus blinded he travelled about 225 feet and managed to clear this vehicle; at this point defendant was about 200 feet from the Holbrook truck; he flicked his headlights to high and did not see the Holbrook truck until he was about 100 feet from it, still travelling about 50 miles per hour; he did not at this time see plaintiff's vehicle or the pedestrian Wynne; he veered left but struck Wynne, the rear of the Holbrook truck, and then plaintiff's vehicle at a point about 15 feet beyond the Holbrook truck; Holbrook had been drinking.

The third-party defendants assert that, even assuming Holbrook was negligent, such negligence was insulated by the admitted intervening negligence of defendant. The Court does not accept this contention as the law under the facts of this case. There are North Carolina cases, to be sure, which support the principle; there are also cases in which the Court refused to apply it. More than a casual analysis of the evidence in a particular case is required in order to determine when the North Carolina Court will apply such principle of insulation to exculpate one whose negligence is only passive and first in point of time. In my opinion, the proper rule to be applied here is set forth in Caulder v. Gresham, 224 N.C. 402, 404, 30 S.E.2d 312, 313, in these words: "Where the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon

both of the guilty parties." The only question for determination then is whether the third-party defendants were negligent in some respect which proximately and together with the admitted negligence of the defendant caused the injury and damage to the plaintiff. If so, the third-party defendants were joint tortfeasors, and as such are liable for contribution to the defendant. We are in no measure interested here in the question of fault insofar as the first accident is concerned; what we are interested in is whether Holbrook thereafter failed in the performance of some legal duty owed the plaintiff and other users of the highway.

The duties imposed upon Holbrook following his collision with the truck ahead of him which caused his truck a flat tire and disabled his motor, and as to which it might be said he failed, arise under the provisions of General Statutes of North Carolina, Section 20–161, which in part reads:

"(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved * * * portion of any highway * * * when it is practicable to park or leave such vehicle standing off the paved * * * portion of such highway * * *. Provided further that in the event that a truck, trailer or semi-trailer be disabled upon the highway that the driver of such vehicle shall display, not less than two hundred feet in the front and rear of such vehicle, a warning signal; that during the hours from sunup to sundown a red flag shall be displayed, and after sundown red flares or lanterns. * * *

"(b) * * * (Not applicable.)

"(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved * * * portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

We should first consider whether subsection (c) applies so as to exclude Holbrook from its operation. In my opinion it does not. The facts here do not reveal the type of situation which the Legislature had in mind when it inserted this subsection in the "rules of the road". It seems to me the lawmakers had in mind a situation such as the evidence disclosed in Morris v. Jenrette Transport Co., 235 N.C. 568, 70 S.E.2d 845. In that case the defendant's tractor-trailer became disabled, causing it to stop upon the highway; the driver drove as far to his right of the highway as it was possible for him to do before the motor stalled completely and before he had time to get out of the cab the plaintiff's car approached and collided with his vehicle. The evidence here reveals that a period of from three minutes to an hour elapsed between the two collisions. It was probably more than the minimum and less than the maximum, but in any event sufficient time was allowed for the removal of the Holbrook truck off the highway and onto the shoulder, which was of sufficient width for the purpose. Nichols, the driver of the truck with which Holbrook collided, did so and Holbrook could have done likewise, if he had desired, but he made the statement that he wished to have his truck remain where it was until the patrolman arrived, having found that his tail light was still burning, and made no effort to clear the highway. The fact that the tail light was burning did not relieve Holbrook of the duty to comply with the statute prohibiting the leaving of his vehicle on the paved portion of the highway if it was "practicable to park or leave (it) standing off of the paved * * * portion of such highway".

The North Carolina Court, so far as I know, has not rendered a decision which helps in determining the meaning of the word "practicable", but Webster's New International defines it as "capable of being put into practice, done or ac-

182

complished; feasible." In Legere v. Tatro, 315 Mass. 141, 52 N.E.2d 11, it was held that the word is not synonymous with "convenient" and, it seems clear, should not be construed as meaning "possible". Perhaps it should be interpreted as meaning not only possible but sensible and indicated by discretion in the light of all the factors. However understood, though, a question to be answered by the Court as a jury is presented. One of the truck's tires was flat and the motor was out of commission, but there is no reason to suppose that with the manpower present the truck could not have been removed on to the shoulder. I find that it could have been so removed. The shoulder was dry and the wheels on the right side were already off the pavement; the remainder of the light three-quarter ton truck could have been pushed on to the shoulder by the occupants of both trucks with a minimum of effort. Holbrook is in no position to claim it could not have been done, for he made no effort to do so; in fact, he gave it no thought. The evidence discloses that traffic was heavy on the highway at the time and the exercise of due care would have indicated danger in leaving his vehicle so as to block most of one lane of traffic on a two lane highway, even though the tail light was burning. The accident itself demonstrates that the burning tail light was insufficient warning to the defendant, and also demonstrates the wisdom of the statutory prohibition against leaving a vehicle on the paved portion of the highway, whether lighted or unlighted, when practicable to remove it.

It is my opinion that it was practicable for Holbrook to remove his truck from the pavement and that his failure to do so constituted negligence. I also find that such negligence was one of the proximate causes of the damage and injury to plaintiff.

I will deal with one other question. The third-party defendants contend that the part of Section 20–161 of North Carolina General Statutes requiring the driver of a truck, trailer or semi-trailer to display red flares or lanterns when disabled upon the highway is not applicable to a three-quarter ton truck, and I am of the opinion that this position is tenable. We do not have the benefit of an interpretation by the North Carolina Court, but it is significant that in the statute, Section 20–141, fixing speed regulations, pick-up trucks of less than one ton capacity are classed with passenger cars. It is my understanding that the defendant's counsel concedes the soundness of the holding.

It follows that third-party defendants are liable to defendant for contribution and a judgment accordingly will be entered.