William A. HILLOCK, John B. Hillock, by his father and next friend, William A. Hillock

v.

Francis L. BAILEY.

Supreme Judicial Court of Maine.

Oct. 18, 1966.

Peter N. Kyros, Portland, for plaintiff.

Harrison L. Richardson, Jr., James R. Flaker, and Franklin G. Hinckley, Portland, for defendant.

Before WILLIAMSON, C. J., and WEB-BER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

RUDMAN, Justice.

On appeal. This action arose out of an automobile accident and was brought by John B. Hillock pro ami to recover damages for his personal injuries and by William A. Hillock seeking to recover for his expenses and loss of services of his son.

The accident occurred on February 13, 1959, in the Town of Scarboro, Maine, at approximately five-thirty o'clock in the afternoon, when an automobile operated in an easterly direction by the defendant struck and injured the plaintiff, John B. Hillock, who was a pedestrian walking in an easterly direction on the public highway designated as Route #22 running in a generally easterly and westerly direction, and near the intersection of Route #22 with Saco Street. The road west of the intersection for a distance of 1500 feet or more is a straight two-lane highway. The posted speed was 35 m.p.h. and the estimated speed of the defendant was 20–25 m.p.h. The night was clear and visibility good. The paved portion of the road was practically clear of snow with some snow on the shoulders of the road. There were no cars traveling either in front or rear of the defendant in his line of traffic. There were cars traveling in the opposite or westerly direction and the headlights of defendant's car were on low beam.

The plaintiff and his brother Richard, together with their companion Siegfried Myers, were walking somewhere between the southerly side of the paved portion of the road and the snow bank on the southerly side of the shoulder. When they reached a point approximately 200–250 feet west of the intersection the Myers boy crossed over to the northerly side of the road, continuing to walk on the northerly side while the plaintiff and his brother Richard continued walking somewhere between the southerly side of the paved portion and the snow bank on the southerly side of the shoulder, Richard walking approximatley 50–60 feet ahead of his brother John. A moment prior to the accident Richard turned to his brother John and said: "Look", "Stop—Look". The defendant did not see the plaintiff, neither did the plaintiff see the defendant's car nor the light of the car as it approached the plaintiff. A short distance west of the intersection the defendant felt a slight brush against the right side of his automobile, continuing a short distance felt a thud and immediately brought his automobile to a stop. He then got out of his automobile, found Richard lying halfway on the traveled portion of the road and the rest of his body on the shoulder, and close by pieces of the broken lens of the right headlight.

The legislature, through the enactments of statutes, prescribes rules designed to safeguard travelers, which must be obeyed. They are standards for testing negligence and contributory negligence. If violated, it is prima facie evidence of negligence. It is conclusive unless the party violating the rule comes forward with evidence of executory circumstances to justify the violation of the statute. Nadeau v. Perkins, 135 Me. 215, 193 A. 877; St. Peter v. Dyer, 161 Me. 302, 305, 211 A.2d 575.

If, however, he fails to furnish proof of such legal excuse, then it is accurate to say that negligence is established as a matter of law. Whether or not such violation be a proximate cause or proximately contributes to the injury is a jury question. Tedla v. Ellman, 280 N.Y. 124, 19 N.E.2d 987.

The pertinent statute, 29 M.R.S.A. § 904, governing the use of highways by pedestrians is:

"Where sidewalks are provided and their use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent way.

"Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the way or its shoulder facing traffic which may approach from the opposite direction."

The object of the statute is to require a pedestrian at all times to keep to the extreme left of the highway so as to face and be able to see cars approaching from the opposite direction, and be out of the way of cars on the right of the highway approaching from behind and give him the benefit of seeing an oncoming vehicle and an opportunity to take such action as may be necessary for his own safety. Hamilton et al. v. Littlefield, 149 Me. 48, 98 A.2d 545; Stearns v. Smith, 149 Me. 127, 129, 99 A.2d 340; Cameron v. Stewart, 153 Me. 47, 49, 134 A.2d 474.

"The statutory enactments regulating traffic upon the public highways are made to be obeyed. They are the outgrowth of necessity. On the observance of them depends the safety of the users of such highways. Failure to obey them not only endangers the safety of the person guilty of the disobedience, but it endangers the safety of others using them in a lawful manner. Courts, therefore, should not look lightly upon infractions of these regulations. One injured while in the act of disobedience of them should be compelled to show with clearness that his act in no way contributed to his injury." Benson v. Anderson, 129 Wash. 19, 223 P. 1063, 1064 (Wash.).

The reason which the plaintiff gives for his walking on the southerly side of the road or shoulder was expressed in the following questions and answers:

"Q As I understand it, you were walking along the southerly edge of this road, the shoulder?

A Yes.

Q Why weren't you walking on the northerly edge of the road?

A The snowbank where the plow plowed it up, it wasn't out as far as it was on the otherside."

&ast; &ast; &ast; &ast; &ast; &ast;

"Q As I understand your testimony, and I want to be sure I understand it, Siegfried Myers, the young boy who was with you that night was—you had come from the west and were walking east on the right-hand side of the road?

A Yes.

Q Siegfried Myers had crossed the road, I believe you have testified previously?

A Yes.

Q Back some 200 feet?

A Yes.

Q He crossed over to the north side of Route 22 and he walked on the left side of Route 22 a distance of 200 feet right to the Sherman store?

A Approximately.

Q But he walked a considerable distance, didn't he?

A Yes."

The testimony of Siegfried Myers, offered in rebuttal by the plaintiff in part is as follows:

"Q From where the accident occurred. How far back is it where you crossed?

A I couldn't say how far back.

Q Was it 50, 100, 200 feet back? How far back approximately, if you can recall?

A About 200 feet.

Q Roughly 200 feet?

A Yes."

*    *    *    *    *    *

"Q You didn't have any difficulty walking on the north side of the road, did you, Siegfried?

A You mean the side of the store, Sherman's store?

Q No. When you were back here 200 feet or so, with Mr. Kyros giving you these feet that you could pick out, 50, 100, 200. When you were 200 feet back here and were walking along the north side of Route 22, you didn't have any difficulty, did you?

A No, not too much; there was snow there; I was walking on snow partly."

John T. Flaherty, Police Captain, Scarboro Police Department, was called as a witness and testified that the paved portion of the road was practically bare of snow; that the shoulder on the southerly side, although plowed approximately 4–5 feet, had a covering of snow with gravel exposed in some places. The northerly shoulder had also been plowed a lesser width and had a covering of snow.

Later in the trial of the case, plaintiff was called as an adverse party, examined by the defendant and testified as follows:

"Q Do you recall being asked these questions and giving these answers—at page 9 of the deposition transcript, Counsel: 'Question: Now, was there snow on the traveled portion of the road at the point where the accident occurred? Answer: On the pavement, you mean? No, there was none. Question: Was there snow on the shoulder? Answer: There was the shoulder, then dirt, then snow. Question How much of the shoulder was exposed to your view? Answer: Well, there was about 8 inches to a foot of dirt and then there was snow piled up.' Do you recall being asked those questions?

A Yes.

Q And giving those answers?

A Yes.

Q What color trousers were you wearing on the night that this happened?

A Just regular, something like dungarees.

Q Blue dungarees?

A Yes.

Q Now, it is true, is it not, that Siegfried Myers crossed the road some 250 feet back from Sherman's store? That is your testimony under direct examination; right?

A Back from where we got hit, I believe.

Q From where you got hit?

A Yes, about.

Q 250 feet back from that point?

A Yes. There is a house there and he crossed just a little ways in front of the house.

Q But you believe that is 250 feet?

A About.

Q And you actually saw him cross the street there, didn't you?

A Yes.

Q And after he crossed the street, Siegfried Myers walked on the left side of the street as you were going along some distance in front of you, right, or was he right beside you?

A He wasn't right beside us. Yes, he was in front of us, I think.

Q You could still observe him, though, couldn't you?

A Yes.

Q He was on the left side walking along and you were on the right side walking along Route 22; is that right?

A Yes, but he was in front of us.

Q He was, but you could still see him?

A Yes.

Q And you could see him all the time from the time he actually crossed the road up until just before, say, the time the accident happened; right?

A Yes."

"In these actions, the burden to prove the negligence of the defendant, and to prove that no lack of due care contributed to the injuries, was upon the plaintiffs. Baker v. McGary Transportation Co., 140 Me. 190, 36 A.2d 6; Rouse v. Scott, 132 Me. 22, 164 A. 872. Also, where a father is plaintiff, seeking to recover for expenses and loss of minor's services, if there is contributory negligence on the part of the son it bars the father from recovery. Bonefant v. Chapdelaine, 131 Me. 45, 51, 158 A. 857. It should appear from the circumstances that the defendant was negligent and that the plaintiff was using due care. 'If the result was produced by a commingling of the negligence of the two parties, the plaintiff cannot recover.' Lesan v. Maine Cent. Railroad Co., 77 Me. 85, 87; White v. Michaud, 131 Me. 124, 128, 159 A. 570; Eaton v. Ambrose, 133 Me. 458, 180 A. 363. The standard of measurement for both parties is, therefore, the care and caution exercised by a person who is ordinarily prudent and thoughtful. One who falls below this level, when in dangerous circumstances, is negligent. The law does not expect the impossible, but it does expect ordinary or reasonable care." Barlow, pro ami v. Lowery, 143 Me. 214, 217, 59 A.2d 702, 704; Cameron v. Stewart, supra; Richardson v. Grezeszak, 358 Mich. 206, 99 N.W.2d 648 (Mich.).

■■■ It is plain that the minor plaintiff, at the time of his injury, was walking as a pedestrian on the right side of the traveled way or its shoulder. The statute distinctly commands him "when practicable" to walk only on the left side of the highway or its shoulder. A party in such a position has the burden of proving excuse or justification. He has the affirmative of the issue. Failure to excuse or justify walking on the wrong side of the road spells negligence. It is axiomatic that a pedestrian, who does not comply with the statute and its purpose, does not avail himself of every reasonable precaution for his safety and is negligent, but the plaintiff would still have to carry the burden of proving that his violation of the statute was not a proximate contributing cause of the accident. Whether walking on the wrong side of the road when not excusable or justifiable, i. e. when practicable to walk on the left side of the road facing traffic, is a proximate contributing cause of the accident under all the facts and circumstances of the case is usually a jury question. Cameron v. Stewart, supra; Stearns v. Smith, supra; Crouse v. Pugh, 188 Va. 156, 49 S. E.2d 421, 427, 4 A.L.R.2d 1242; Legere v. Tatro, 315 Mass. 141, 147, 52 N.E.2d 11; Kralik v. LeClair, 315 Mass. 323, 326–327, 52 N.E.2d 562; Dohm v. R. N. Cardozo &

Bro., 165 Minn. 193, 206 N.W. 377, 378; Wojtowicz v. Belden, 211 Minn. 461, 1 N.W.2d 409, 410; Paquette v. Consumers Power Co., 316 Mich. 501, 25 N.W.2d 599, 601; Panzer v. Hesse et al., 249 Wis. 340, 24 N.W.2d 613; Geri v. Bender, 25 Wash. 2d 50, 168 P.2d 144.

The defendant asks us to set aside the verdict as contrary to the law and evidence and because the Trial Court erred in the instructions given to the jury.

■ We are not here passing on the sufficiency of the evidence of negligence of the defendant, nor the contributory negligence of the plaintiff. We do, however, find that it was a jury question and it was error to have instructed the jury—

"I instruct you that if you find as a fact, and I do not suggest what you should find as fact; I simply say to you, I instruct you that if you find as fact that these boys, or specifically this plaintiff was walking along the right edge of the highway or in the adjacent space, whatever it is called, the shoulder of the highway —right, looking in an easterly direction— rather than having come on to the highway from a point where his position would be obscured, then you must as a matter of law find that this defendant was negligent.

"Where were the boys? Specifically, where was this plaintiff? Was he in a position where his presence was obscured? Did he specifically come darting across the field out into the highway in such manner that his presence could not have been known to the defendant? Or was he, as the plaintiff contends, walking along the highway? If he was walking along the highway, then a finding by you, I instruct you, that the defendant toward him was not negligent would not find support in the evidence.

"If you determine, on the other hand, that he had come from a position of obscurity and had dashed from a position of safety directly into the path of the defendant's vehicle under such circumstances that a reasonable person who was exercising the kind of vigilance which the law requires of one operating a motor vehicle upon a highway could not have made observation, could not have seen him, then you will consider whether or not on all the evidence the defendant violated the duty, which I instruct you he owed the plaintiffs, to exercise reasonable care.

\* \* \* \* \* \*

"So, then, if you have first determined the negligence of the defendant—and I repeat again, if you find that the plaintiff was walking along the highway rather than being some other place, then as a matter of law you must find the defendant negligent—\* \* \*."

■ It was error to instruct the jury that if they found that the plaintiff was merely walking along the road or shoulder on the right side, then the defendant was negligent as a matter of law and the only remaining question was whether or not that negligence was a proximate cause of the accident. This instruction was obviously predicated on the duty to look and to see that which would be plain and apparent to one in the exercise of due care. (Spang v. Cote, 144 Me. 338, 68 A.2d 823). On the peculiar facts and circumstances of this case, however, the Spang rule does not apply. A pedestrian under certain conditions may be effectively camouflaged and virtually invisible a few feet away. The figure of an eleven year old boy at the side of the road in the hours of darkness wearing what in effect may appear as black and white clothing against the black and white background of macadam, gravel and snow, is not to be compared to a trailer loaded with hay under a street light (Spang v. Cote, supra).

The Presiding Justice discussed two theories, one that the plaintiff was walking along the right side of the road, the other that he darted into the road from a place of relative concealment and obscurity. The

evidence, however, admits of still another theory. The defendant insists that his car never left the macadam surface. The plaintiff places himself on the gravel shoulder. It is admitted that just before the accident occurred the plaintiff's brother shouted "Let's go." "Look". "Stop"— "Look". A jury could find that at that moment the plaintiff stepped or darted from the shoulder on to the macadam directly in the path of the defendant's car in such manner and with such celerity that even if the defendant had been observing the plaintiff he could not have acted to avoid the accident. In short, we are here concerned not only with whether or not or when the defendant should have seen the plaintiff, but also what the defendant would have seen and what effect that observation should have had upon his conduct.

■ During the course of instructing the jury, the Court stated:

"When one uses the highway as a pedestrian where there are no sidewalks, the legislature in describing his conduct had this to say: 'Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the way or its shoulder facing traffic which may approach from the opposite direction.' You will notice that the statute says use of the left side is to be made when practicable. The word 'practicable' as used in the statute is not synonymous with the word 'possible', nor is it synonymous with the word 'convenient'. The word 'practicable' as our legislature has employed it in that particular statute means 'feasible', 'fair', 'reasonable'."

To instruct the jury that the words "fair" and "reasonable" have the same meaning as "practicable", under the facts and circumstances in this case, without more, introduces an element of uncertainty in the meaning of the statute, when the words "fair" and "reasonable" are used to define "practicable" it is confusing and liable to misconstruction and hence erroneous.

The use of the word "feasible" in the Trial Court's instructions as having the same meaning as "practicable" without further definition or explanation may equally be perplexing to or misinterpreted by the average juror. The definition of the word "feasible" as stated in 35 C.J.S. 964 applicable to the instant case is "capable of being done, executed or effected; capable of being managed, utilized or dealt with successfully."

■ We have not heretofore had occasion to define the word "practicable" within the intendment of the statute (29 M.R.S.A. § 904 supra). As here employed "practicable" is not synonymous with either "possible" or "convenient". Clearly, if it is not possible to walk on the left side, it is not "practicable" to do so, but the converse is not necessarily true. In like manner it can be said that it may be "practicable" for a pedestrian to walk on the left side of the highway although not convenient for him to do so. The statute is a part of the highway safety law and the word "practicable" as used in such a statute must be defined with a view to carrying out the underlying purpose of the law. The legislature sought thereby to achieve maximum safety for the traveling public. The particular statute rests on a legislative conclusion that, all things being equal, a pedestrian incurs less risk of injury if he uses the sidewalk and if, absent sidewalks, he walks facing traffic. We can fairly assume, however, that the legislature did not intend to compel one to choose either the sidewalk or his left side of the highway, as the case may be, where such choice would increase his risk of injury from any source. Treating the whole phrase "when practicable, walk only on the left side of the way or its shoulder facing traffic which may approach from the opposite direction", as meaning what the words indicate, the procedure must be followed unless there is some valid reason why in some particular respect it is not practicable to do so.

In 72 C.J.S. p. 467, we find the following: "The word 'practicable,' as defined by lexicographers, has a number of significations, and variously defined as meaning as capable of being put into practice, done, or accomplished."

"An act is practicable if the conditions and circumstances are such as to permit its performance or to render it feasible. To be 'feasible' is to be capable of being successfully done or accomplished." Gilmartin v. D. & N. Transportation Co., 123 Conn. 127, 193 A. 726, 728, 113 A.L.R. 1322 and cases cited.

The effect of the statute is to lay the burden of justification upon the person who was on the wrong side of the highway or shoulder thereof.

"The purpose of statutory rules of the road is to afford plain and positive directions as to what each person shall do and may expect of others, that the definite standards and requirements thereby set up may not be subjected to exceptions based upon the judgment of the individual user of the highways or to suit his whim or convenience, and that violation thereof will constitute negligence." Gilmartin v. D. & N. Transportation Co., supra; Tibbetts v. Dunton, 133 Me. 128, 174 A. 453; St. Peter v. Dyer, supra.

In continuing the instructions the Trial Court said:

"Does the evidence as to other circumstances overcome the inference of negligence which results from his violation of the statute, if you find he violated the statute? Obviously, if you determine that it was not practicable, that is to say, was not reasonable for him to have employed the other side of the road, then he was not in violation of the statute if he was walking along the road. It is only if you find that it was practicable for him to have walked on the other side of the road and, despite this practicability, he was not so doing, but rather was walking with his back to oncoming traffic on the right-hand side of the road, then you will ask yourselves, how was he dressed? What were the lighting conditions? What was the purpose of his being upon the highway? Where in the highway was he walking? Was he on the shoulder? Was he off the shoulder? How far on to the shoulder was he off the road? All those various things will be considered by you in determining whether or not the inference of negligence which flow from the fact of his having been in violation of the statute has been overcome by the evidence produced in the case."

■■ If the jury found it was practicable for the plaintiff to walk on the left or northerly side of the highway and if the jury found under all the facts and circumstances that such violation of the statute was a proximate contributing cause of the accident, then the plaintiff could not recover. His dress, lighting conditions, his position on the right side of the highway would be material in determining negligence of the defendant, but immaterial as to the negligence of the plaintiff if under all the facts and circumstances it was practicable to walk on the left side of the highway. It was error to indicate to the contrary.

It follows that we are of the opinion that the Trial Court erred in the foregoing instructions to the jury. This conclusion makes it unnecessary to pass on any of the other issues raised in this case.

The entry will be:

Appeal sustained. New trial granted.

MARDEN, Justice (concurring).

I concur in the result.

The following sentence appears near the close of the opinion: "We can fairly assume, however, that the legislature did not intend to compel one to choose either the sidewalk or his left side of the highway, as the case may be, where such choice would

increase his risk of injury, *from any source*." (Emphasis added.)

Respectfully, I dissent to the use of the phrase "from any source" insofar as it includes risks not attributable to highway traffic.